COMMONWEALTH of Pennsylvania, Appellant,

v.

Rudolph KUBIN, Jr., Appellee. (Two Cases)

Superior Court of Pennsylvania.

Argued Dec. 9, 1993.

Filed March 2, 1994.

James J. Narlesky, Asst. Dist. Atty., Easton, for Com., appellant.

Robert S. Trotner, Easton, for appellee.

Before CAVANAUGH, CIRILLO and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

The Commonwealth appeals from orders dismissing two cases against Rudolph Kubin, Jr. for the Commonwealth's failure to bring Kubin to trial within the time period mandated by Rule 1100. The following timetables give the relevant dates pertaining to Case 1947 and Case 2331 and other dates applicable to both cases.

### CASE 1947

| | |
|---|---|
| Sept. 19, 1989 | Complaint lodged |
| Mar. 5–Sept. 30, 1990 | Kubin waived Rule 1100 rights |
| Apr. 5, 1990 | Kubin placed on ARD |
| Nov. 7, 1990 | Kubin taken off ARD |
| Dec. 10, 1990–Feb. 1, 1991 | Kubin waived Rule 1100 rights |
| Feb. 11–Apr. 30, 1991 | Kubin waived Rule 1100 rights |

### CASE 2331

| | |
|---|---|
| Jan. 8, 1991 | Complaint lodged |
| May 4–June 30, 1992 | Kubin waived Rule 1100 rights |

### DATES RELEVANT TO BOTH CASES

| | |
|---|---|
| Mar. 28, 1991 | Kubin imprisoned in N.J. |
| Apr. 12, 1991 | Kubin bench warranted for failure to appear for trial; Commonwealth knows of N.J. incarceration |
| June 5, 1991 | Bench warrant lifted at Kubin's request; Commonwealth does not object |
| June 28, 1991 | Bench warrant reinstated; Commonwealth mailed Form V to N.J. |

| | |
|---|---|
| Sept. 5, 1991 | Telephone verification that N.J. prison received Form V |
| Sept. 16, 1991 | N.J. administrator informs Commonwealth's administrator that Kubin not contesting the extradition |
| Apr. 1, 1992 | N.J. administrator informed Commonwealth's administrator that Kubin to be paroled the next day |
| Apr. 10, 1992 | Kubin returned to Pennsylvania after waiving extradition |

The Commonwealth concedes that 190 days in Case 1947 and 104 days in Case 2331 of Rule 1100 time are chargeable against the Commonwealth.

At issue here is whether the Commonwealth should be charged with the time between April 12, 1991, when it found out Kubin was incarcerated in New Jersey and April 10, 1992, when Kubin was returned to this jurisdiction. A defendant out on bail must be brought to trial within 365 days from the date the complaint is filed. Pa.R.Crim.P. 1100(a)(3), 42 Pa.C.S.A. When a defendant is unavailable, however, that time is excluded from calculation for Rule 1100 purposes. *Id.* at 1100(c)(3). Incarceration in another state, however, does not automatically constitute unavailability. A defendant is only unavailable if the delay in returning him to Pennsylvania is due to the other state causing the delay; the prosecution, however, must exercise due diligence in attempting to bring the defendant back for trial. *Commonwealth v. Lloyd,* 370 Pa.Super. 65, 80, 535 A.2d 1152, 1160, *alloc. denied,* 518 Pa. 637, 542 A.2d 1367 (1988). A lack of due diligence will cause the time to be charged against the Commonwealth. Here, the Commonwealth failed to make any inquiries between September 16, 1991, and April 1, 1992. This clearly evidences a lack of due diligence.

Due diligence is to be determined on a case-by-case basis. *Commonwealth v. DeMarco,* 332 Pa.Super. 315, 325, 481 A.2d 632, 637 (1984). Furthermore, "[d]ue diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been made to secure the defendant's attendance at trial." *Id.* at 323, 481 A.2d at 636. While we recognize that the Com-

monwealth cannot force another jurisdiction to act, inaction on the Commonwealth's part, without some reliance on the assurances of the other state, does not constitute due diligence.

In *Commonwealth v. Alexander*, 318 Pa.Super. 344, 464 A.2d 1376 (1983), this Court held under similar facts to the present case that the time period when the Commonwealth failed to act was not excludable from Rule 1100 calculation. In *Alexander*, the Commonwealth was held accountable for two periods of inactivity. First, the Commonwealth waited 65 days from finding out the defendant was in jail in New Jersey, January 22, 1980, before beginning the extradition process on March 27, 1980. These 65 days were not excludable. Second, the district attorney waited until July 10, 1980, before inquiring about why he had received no response to his request to have the defendant returned to Pennsylvania. The district attorney stated that in addition to waiting 30 days to allow for a defendant to take advantage of his right to appeal his transfer to the New Jersey Governor, he would wait another 10 days to allow for mailing time. Accepting this 40 day wait as reasonable this Court wrote:

> [T]he span of time between when Attorney Dalfonso "should have" received a response from New Jersey prison officials to his March 27, 1980 letter (*i.e.*, "sometime early May" of 1980) and when he, in fact, did act after receiving no such response (by July 10, 1980) consists of some 60 days that are *unaccountable* for in terms of the "due diligence" standard.

*Id.* at 360, 464 A.2d at 1385 (emphasis in original).

Here, the Commonwealth sent New Jersey its request to detain Kubin and return him to Pennsylvania for trial on June 28, 1991. Two months later the Commonwealth attempted to find out the status of its request and finally made contact with the appropriate New Jersey official on September 16, 1991. On that date, the Commonwealth was informed that Kubin was not contesting extradition. To then wait 198 days until

April 1, 1992, before inquiring what was causing the delay clearly shows a lack of due diligence.[1]

*Commonwealth v. Alexander* is directly on point. The Commonwealth relies on cases which are clearly distinguishable. First, the prosecutors in *Commonwealth v. Lloyd, supra,* did not just sit by and do nothing. They were in constant contact with federal authorities who told the district attorney that they would not release defendant to Pennsylvania because of defendant's previous escapes. Furthermore, the entire process of obtaining defendant for trial only took approximately seven months, despite the noncooperation of the federal authorities. Here, the district attorney's office did not constantly prod New Jersey officials; instead, the Commonwealth chose to wait approximately six months before inquiring about the delay.

Also, the Commonwealth relies on *Commonwealth v. Forrest,* 508 Pa. 382, 498 A.2d 811 (1985), where defendant's counsel conceded that the Commonwealth acted diligently. Although *Forrest* does not provide detailed facts, it is apparent from the case that the prosecutors had several contacts with the New Jersey authorities who then informed them that defendant would not be released until after disposition of the New Jersey charges. As soon as the charges were disposed of, the prosecutors acted promptly in having defendant returned for trial. *Id.* at 388, 498 A.2d at 814. In *Commonwealth v. Johnson,* 305 Pa.Super. 310, 451 A.2d 546 (1982), prosecutors also waited to extradite a defendant until after the New Jersey charges were disposed of because the New Jersey officials told them that they would not release defendant until then. Here, the district attorney's office did not rely on assertions from New Jersey officials that Kubin would not be returned. On the contrary, the extradition secretary failed to act despite being told by the New Jersey official that Kubin was not fighting extradition. Thus, *Forrest* and *Johnson* are clearly distinguishable.

1. The trial court opinion calculated this time span to be 196 days. Our calendar counting indicates that the proper figure is 198 days.

We also find that the Commonwealth did not act diligently when it delayed in sending the Form V requesting the return of Kubin. At the latest, the Commonwealth found out on April 12, 1991, that Kubin was imprisoned in New Jersey. It did not send the Form V until June 28, 1991. For some reason, the Commonwealth's brief does not address this portion of time despite the fact that the trial court's disposition on Case 2331 turned on this period of time. We note with approval the trial court's analysis on this matter:

As mentioned, when defendant did not appear for trial on April 10, 1991, the court issued a bench warrant for his arrest. Because this bench warrant branded defendant as a fugitive from justice, his family was forced to forfeit the bail that it had posted for him. On June 5, 1991, defendant's attorney, knowing that defendant had not willingly failed to appear for trial, sought to avoid the forfeiture by having the bench warrant vacated. In response to this, the Assistant District Attorney representing the Commonwealth at that hearing responded, "There's no real opposition to this," and expressed concern only with regard to defendant's attorney simultaneously representing defendant and the sureties and that the solic[i]tor's office being notified that the forfeiture had been vacated.

Considering this, we reject the Commonwealth's argument that its initial effort to effect extradition "was undermined by defendant's counsel's insistence of the lifting of the bench warrant." The Commonwealth's initial effort was, in fact, "undermined" by its decision to accom[m]odate defendant without regard to the subsequent effect of that decision under Rule 1100. At the June 5th hearing, the Commonwealth failed to oppose the dismissal of the bench warrant and to explain to the court that a bench warrant was necessary as a detainer in order to effect extradition. The same bench warrant that was vacated on June 5, 1991 was rei[n]stated on June 28, 1991 with the provision that the bail forfeiture remain vacated. In light of this, it is beyond our comprehension why the Commonwealth could not have argued for this very arrangement at the June 5th hearing,

thereby possibly preventing the bench warrant from ever having been dismissed, or at least insisted on a waiver of Rule 1100 as the price for the dismissal of the bench warrant.

There is nothing in the record to indicate that the defendant's attorney's request that the bench warrant be lifted was in any way improper, or even unreasonable. It was not the duty of the defendant's attorney to ensure that the District Attorney's Office was properly pursuing extradition, or to advise the court as to the procedures necessary to effect extradition. If the bench warrant was needed in order to act as a detainer for extradition purposes, then it was the duty of the Commonwealth to raise this issue at the June 5th hearing. Its failure to do so clearly evidences a lack of due diligence under Rule 1100.

Trial court opinion, June 16, 1993 (Case 2331), at 9–10.

We also note that this Court has held the Commonwealth accountable under Rule 1100 for unexplained delays in initiating extradition proceedings. *Alexander, supra* (65 days between notification of defendant's out-of-state incarceration and initiation of extradition proceedings not excludable); *Commonwealth v. Kovacs*, 250 Pa.Super. 66, 378 A.2d 455 (1977) (*en banc*) (district attorney's delay of 8 months in filing requisite written request evidenced a lack of due diligence); *Commonwealth v. McNeal*, 261 Pa.Super. 332, 396 A.2d 424 (1978) (*en banc*) (6½-month delay in requesting extradition not excludable). Therefore, the 77–day delay in initiating extradition proceedings is not excludable from Rule 1100 calculation.

Now, through simple addition, we find that 465 days of Rule 1100 time have run in Case 1947 and 379 days have run in Case 2331.[2] The Commonwealth exceeded the permissible 365

2. In Case 1947 we add the 190 days which the Commonwealth concedes have run to the 198 days from September 16, 1991, to April 1, 1992, and the 77 days from April 12, 1991, to June 28, 1991, which we found unexcludable due to the Commonwealth's lack of due diligence. In Case 2331 we add the conceded 104 days to the 198 and 77 days found unexcludable.

days in both cases. We therefore affirm the dismissal of charges in Cases 1947 and 2331.

Orders affirmed.

CAVANAUGH, J., concurs in the result.