**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Ricki Lee BOOZE, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 16, 2008.

Filed May 1, 2008.

---

Benjamin J. Ciocco, Asst. Dist. Atty., for Com., appellant.

Erin W. Dickerson, McMurray, for appellee.

BEFORE: LALLY–GREEN, PANELLA and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 The Commonwealth appeals the May 29, 2007, Order dismissing the charges against appellee Ricki Lee Booze on the basis of a violation of Pa.R.Crim.P. 600, **Prompt Trial.** After thorough and careful consideration, we affirm.

¶ 2 The trial court summarized the facts as follows.

The offense dates were January 10 and January 26, 2006. Detective Barbour interviewed Defendant in the [Allegany] County Jail, Maryland, on February 1, 2006, when he learned of Defendant's whereabouts. Charges were filed in Washington County on February 6, 2006. Detective Barbour faxed a copy of the criminal complaint to [Allegany] County, Maryland; it was his intent that the complaint would act as a detainer. Detective Barbour did not have a detainer issued or participate in any extradition proceedings for this Defendant. In mid-January, 2007 Defendant was transported to Greene County, Pennsylvania, where pending criminal charges were ultimately dismissed by a District Judge. On January 25, 2007, Defendant Booze had her preliminary hearing before District Judge James Ellis here in Washington County; she was bound over on Criminal Conspiracy (2 counts); Criminal Trespass (2 counts); Criminal Mischief; and Theft by Unlawful Taking (2 counts). Two counts of Burglary were dismissed. Detective Popeck, Chief Detective of Washington County District Attorney's Officer [sic], is in charge of extraditions. He testified that neither formal extradition papers nor detainers were filed with the state of Maryland; that the first attempt to return Defendant to the Commonwealth was January 9, 2007. Detective Popeck testified about numerous phone calls to authorities in Maryland and to an Agreement on Detainers....

Trial Court Opinion, Bell, J., 5/7/07, at 2–3.

¶ 3 This timely appeal was filed on June 12, 2007. Record, No. 1. The Commonwealth raises the following issues for our review:

1. Did the trial court err in finding that the Commonwealth/Appellant did not exercise due diligence as required by Pennsylvania Rule of Criminal Procedure 600, when Defendant/Appellee was incarcerated in another state?

2. Did the trial court err in granting the Defendant/Appellee's motion to dismiss pursuant to Pennsylvania Rule of Criminal Procedure 600 when the Defendant/Appellee did not suffer any prejudice, nor was any prejudice shown?

Appellant's brief at 3.

¶ 4 Initially, we note that the Commonwealth's second argument is waived because it provides no meaningful analysis to bolster its contention. The only argument in appellant's brief regarding this issue is, in its entirety: "Appellant suffered no prejudice from any delay in prosecuting her Washington County charges, and therefore is not entitled to relief under Pa.R.Crim.Pro. 600." Appellant's brief at 7. *See Commonwealth v. Sneddon,* 738 A.2d 1026, 1028–1029 (Pa.Super.1999); *see also* Pa.R.A.P 2119 (failure to develop argument results in waiver of claim.). Having found waiver as to the second issue, we turn our attention to the Commonwealth's remaining issue.

■ ¶ 5 We review the Commonwealth's Rule 600 challenge based on the following precepts set forth by this Court:

In evaluating Rule [600] issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

The proper scope of review ... is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the [trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through *no fault of the Commonwealth.*

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters ..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Ramos,* 936 A.2d 1097, 1100 (Pa.Super.2007); citing *Common-*

*wealth v. Hunt,* 858 A.2d 1234, 1238–1239 (Pa.Super.2004).

¶ 6 Rule 600 provides in pertinent part:

(A)(3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

. . .

(B) For the purpose of this rule, trial shall be deemed to commence on the date the trial judge calls the case to trial, or the defendant tenders a plea of guilty or *nolo contendere.*

(C) In determining the period for commencement of trial, there shall be excluded therefrom:

(1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;

(2) any period of time for which the defendant expressly waives Rule 600;

(3) such period of delay at any stage of the proceedings as results from:

(a) the unavailability of the defendant or the defendant's attorney;

(b) any continuance granted at the request of the defendant or the defendant's attorney.

*Id.*

¶ 7 Rule 600(A) makes clear that the mechanical run date comes 365 days after the filing of the complaint. This Court then calculates the adjusted run date according to 600(C). The adjusted run date is calculated by omitting certain times proscribed by 600(C), "excludable time," from the calculation of the run date.

Pursuant to Rule 600(A) and (C), we calculate the mechanical and adjusted run dates as follows:

The mechanical run date is the date by which the trial must commence under [Rule 600]. It is calculated by adding 365 days (the time for commencing trial under [Rule 600]) to the date on which the criminal complaint is filed. As discussed herein, the mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.

*Ramos,* 936 A.2d at 1102.

¶ 8 If a trial occurs after the adjusted run date, we must determine whether the Commonwealth employed due-diligence. "Due diligence is a fact specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Id.; citing Commonwealth v. Hunt,* 858 A.2d 1234, 1241–1242 (Pa.Super.2004).

¶ 9 In this case, the Commonwealth charged appellee on February 6, 2006. The run date for purposes of Rule 600 was February 7, 2007, and appellee still had not been brought to trial when she filed her motion to dismiss on April 3, 2007. Therefore, without any excludable time charged to appellee, the Commonwealth would be in violation of Rule 600. The

Commonwealth argues Booze was unavailable while incarcerated in Maryland and that it exercised due diligence in procuring her availability to stand trial in Washington County. *See* Appellant's brief at 7. This proposition is without merit.

¶ 10 This Court has stated that mere incarceration in another state does not make a defendant unavailable within the meaning of Rule 600. In *Commonwealth v. Kubin*, 432 Pa.Super. 144, 637 A.2d 1025, 1026 (1994), this Court held that incarceration in another state does not automatically mean that a defendant is unavailable in the Rule 600 speedy trial calculus. "A defendant is only unavailable if the delay in returning him to Pennsylvania is due to the other state causing the delay; the prosecution, however, must exercise due diligence in attempting to bring the defendant back for trial." *Id.*

¶ 11 Here, the Commonwealth knew appellee was being held in Maryland yet failed to follow the proper steps to secure her upon the disposition of the Maryland charges. Clearly, there was a lack of due diligence. Although the Commonwealth faxed a copy of the complaint to the Maryland authorities, there were no assurances made on behalf of Maryland that this would in fact serve as a detainer. In fact, there is no testimony, except for the testimony of Detective Barbour, that he was in contact with Maryland authorities. There is nothing more in the record showing that the Commonwealth faxed over a complaint intending for it to act as a detainer. Without corroboration, there is simply no way for this Court to justify the Commonwealth's actions. "While we recognize that the Commonwealth cannot force another

jurisdiction to act, inaction on the Commonwealth's part, without some reliance on the assurances of the other state, does not constitute due diligence." *Kubin*, 637 A.2d at 1027; *see also Commonwealth v. Alexander*, 318 Pa.Super. 344, 464 A.2d 1376, 1385 (1983) (holding that the Commonwealth's failure to adduce evidence illustrating the reason for its inaction in extraditing the defendant did not constitute due diligence).

¶ 12 Further, the Commonwealth never instituted proper extradition proceedings to secure appellee to face charges in Pennsylvania. In fact, the Commonwealth still had not taken action in this matter as late as when appellee filed her motion to dismiss. The Commonwealth chooses to excuse its inaction by stating "rather than extradite the Defendant/Appellee to Pennsylvania prior to the resolution of her Maryland criminal charges, Detective Barbour and Chief Detective Popeck maintained awareness of the Defendant/Appellee's Maryland prosecution." Appellant's brief at 9. This Court has previously rejected this assertion.

¶ 13 In *Alexander, supra*, this Court held under similar facts that the time period in which the Commonwealth failed to act upon finding out defendant's incarceration by way of initiating extradition was not excludable time.[1]

¶ 14 Here, the Commonwealth knew appellee was held at a Maryland facility as of February 1, 2006. The Commonwealth filed a complaint against her on February 6, 2006. Having found that the Commonwealth did not exercise due diligence by initiating extradition or filing a formal de-

---

1. We recognize that *Commonwealth v. Alexander*, 318 Pa.Super. 344, 464 A.2d 1376, 1385 (1983), was decided when Rule 600 was known as Rule 1100. The due diligence analysis, however, remains viable.

tainer, the mechanical run date was February 7, 2007. As of the time of Booze's Motion to Dismiss filed on April 3, 2007, the Commonwealth still had not initiated any extradition proceedings or filed formal detainers. Consequently, the Commonwealth committed a Rule 600 violation and Booze's motion was appropriately granted.

¶ 15 There has been some confusion regarding the Commonwealth's duty as to due diligence when a defendant is incarcerated in another state. Both the trial court and appellee assert that extradition papers or formal detainers should have been filed. Here, we take the time to clarify according to the dictates of two important statutes. The Extradition Act provides the following:

§ 9126. **Extradition of persons imprisoned or awaiting trial in another state or who have left the demanding state under compulsion.**

(a) **Extradition from another state.**—When it is desired to have returned to this Commonwealth a person charged in this Commonwealth with a crime, and such person is imprisoned or is held under criminal proceedings then pending against him in another state, the Governor of this Commonwealth may agree with the executive authority of such other state for the extradition of such person before the conclusion of such proceedings or his term of sentence in such other state, upon condition that such person be returned to such other state at the expense of this Commonwealth as soon as the prosecution in this Commonwealth is terminated.

42 Pa.C.S.A. § 9126. Thus, in accord with the *Alexander* decision, *supra,* the Commonwealth should at least *initiate* extradition proceedings within 365 days from the filing of the complaint for defendants who are imprisoned in another state in order to meet its duty as to due diligence. We note that the *Alexander* Court conceded that the Extradition Act is not a mandatory requirement; however, it also held "this fact does not discount the availability of the Extradition Act as a means by which appellant's return could have been *initiated.*" *Alexander, supra* at 1383. Thus reading Rule 600 in conjunction with 42 Pa.C.S.A. § 9101, **Agreement on detainers,** we conclude that the Commonwealth should have initiated extradition papers at the very latest by February 7, 2007, the run date pursuant to Rule 600.

¶ 16 Given a fair reading of the statute, however, we are not suggesting that the Commonwealth was under a legal duty to file a formal detainer pursuant to the **Agreement on detainers,** 42 Pa.C.S.A. § 9101, between the time of the filing of the Washington County complaint on February 1, 2006, and the Maryland sentencing date, October 4, 2006. The statute pertaining to detainers provides for the filing of formal detainer papers "whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment...." *Id.* at art. iii(a). Thus, the statute does not require a filing of formal detainers until a term of imprisonment has been imposed in the asylum state. Accordingly, in this case, the Detainers Act would have been an appropriate means of securing appellee as of October 4, 2006.

¶ 17 While we are cognizant of the fact that no statute requires the Commonwealth to institute these actions, the legislature enacted these statutes to institute a process of securing defendants being held in other states. Clearly, the legislature took into account the problems inherent in securing such defendants for purposes of a

speedy trial given its articulation in section 9101:

> The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and *difficulties in securing speedy trial of persons already incarcerated in other jurisdictions,* produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, *it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges* and determination of the proper status of any and all detainers based on untried indictments, informations or complaints.

42 Pa.C.S.A. § 9101 art. i (emphasis added).[2] This case does not vitiate previous case law that allows excludable or excusable time to the Commonwealth upon a showing of due diligence. In this case, however, due diligence was not shown as there were no insurmountable impediments obstructing the Commonwealth from bringing appellee to Pennsylvania for trial.

¶ 18 Accordingly, we find the Commonwealth did not exercise due diligence in securing appellee for trial in Westmoreland County, Pennsylvania. Thus, the Order of the trial court is affirmed.

¶ 19 Order affirmed.

¶ 20 Concurring Statement by LALLY–GREEN, J.

**CONCURRING STATEMENT BY LALLY–GREEN, J.:**

¶ 1 While the majority's analysis sets forth a persuasive rationale, I write separately to address the following. The majority correctly notes that a defendant's incarceration in another state does not automatically result in an extension of the Rule 600 run date pursuant to Rule 600(C). Rather, the Commonwealth must act with due diligence in bringing the defendant to Pennsylvania for trial. *Commonwealth v. Kubin,* 432 Pa.Super. 144, 637 A.2d 1025 (1994). As we noted in *Commonwealth v. Ramos,* 936 A.2d 1097 (Pa.Super.2007) (*en banc*), the due diligence analysis is part and parcel of Rule 600(G) and the Commonwealth bears the burden of proving its diligence. *Id.* at 1102.

¶ 2 In the instant matter, the record reflects almost no evidence of the Commonwealth's due diligence in bringing Appellee to Pennsylvania for trial. Here, the record reflects only that the Commonwealth faxed a copy of the Pennsylvania criminal complaint to Maryland authorities.[3] I observe that we have upheld or recognized Rule 600 dismissals where the record reflected more evidence of diligence than the fax in the instant matter. *Kubin; Commonwealth v. Alexander,* 318 Pa.Super. 344, 464 A.2d 1376 (1983). Here, since the record has almost no evidence from the Commonwealth of its due diligence, I agree with the majority that the

---

**2.** The rules of statutory construction also allow the Court to draw a conclusion that the legislature's intent was to secure defendants who are incarcerated or pending charges in another state by means of instituting its procedures pursuant to the Extradition and/or the Detainers Act. *See* 1 Pa.C.S.A. § 1921 *et seq.* **Legislative intent controls.**

**3.** I rely here on the trial court opinion, as the Commonwealth has failed to make the tran-

script of the Rule 600 hearing a part of the certified record. Also, the Commonwealth's brief cites no pertinent authority in support of its argument, other than to establish the standard of review. This results in waiver, and is an independent basis for affirming the trial court's order. Pa.R.A.P. 2119(b); *Commonwealth v. Natividad,* 595 Pa. 188, 237–39, 938 A.2d 310, 340 (2007).

trial court did not err in granting Appellee's motion to dismiss. Given the scant record before us, I believe it unnecessary to analyze our detainer and extradition statutes. Subject to the foregoing comments, I join the majority opinion.